UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARGARET BOZGOZ, *et al.*,

    *Plaintiffs*,

v.

DARRYL GLEN BLACKWELL, *et al.*,

    *Defendants.*

Civil Action No. 19-2790 (RDM)

## MEMORANDUM OPINION

Now before the Court is Defendants' motion to dismiss, Dkt. 38, the supplemental complaint filed by Plaintiffs Margaret Bozgoz and Robert Bozgoz, Dkt. 1, and Plaintiffs' "Motion to Transfer the Case to the Department of Defense, Military Tribunal," Dkt. 50. For the following reasons, the Court will **GRANT** Defendants' motion and **DENY** Plaintiffs' motion.

### I.  BACKGROUND

Plaintiffs' claims in this case derive in part from their efforts to pursue another lawsuit, so the Court will begin with a brief overview of that suit before turning to the allegations underlying the instant dispute. *See Dupree v. Jefferson*, 666 F.2d 606, 608 n.1 (D.C. Cir. 1981) (identifying "related proceedings in other courts" among those matters of which the Court may take judicial notice).

**A.    Original Proceedings**

Plaintiffs initiated their original suit on January 29, 2019, "asserting retaliation and undue delay of reasonable accommodations on behalf of" Robert Bozgoz, who at the time was "an employee of the Department of Veterans Affairs [the "VA"]." *Bozgoz v. James*, No. 19-cv-0239, 2019 WL 11322842, at *1 (D.D.C. Apr. 2, 2019). Robert's wife, Margaret Bozgoz, describes

herself "as her husband's 'Americans with Disabilities Act Representative,' and in that role, she has pursued administrative relief on" behalf of Robert. *Bozgoz v. James*, No. 19-cv-0239, 2020 WL 4732085, at *1 (D.D.C. Aug. 14, 2020). In addition, Plaintiffs alleged that Robert Bozgoz requested, but was denied, permission to work overtime on Martin Luther King Day in January 2018. Compl. ¶¶ 1–3, *Bozgoz v. James*, No. 19-cv-0239 (D.D.C.) (Dkt. 41 at 32–33). Robert, who is white, alleged that Voncelle James, his "African American Supervisor," committed a "discriminatory [a]ct" by denying his request, and that the VA unlawfully retaliated and discriminated against him when he sought to "file an EEO complaint." *Id.* at ¶¶ 2, 4 (Dkt. 41 at 32–33); *see also Bozgoz*, 2020 WL 4732085, at *2–3 (summarizing allegations).

On August 15, 2019, Plaintiffs filed a supplemental complaint which "included claims against Judge Amy Berman Jackson, who was the presiding judge in the matter; a Maryland state court judge; Maryland state prosecutors; and other court officials that related to, among other things, Plaintiffs' efforts to serve the complaint in that matter and various conflicts that ensued." *Bozgoz v. Blackwell*, No. 19-cv-2790, 2021 WL 1518337, at *1 (D.D.C. Apr. 16, 2021). "In response, Judge Jackson severed these new claims, and, because those claims involved her, she referred the severed claims to the Calendar Committee for random reassignment." *Id.* Those claims—and only those claims—were assigned to the undersigned judge. *Id.*

Defendants moved to dismiss Plaintiffs' remaining (non-severed) claims, and Judge Jackson granted that motion in part. Plaintiffs' "prolix and discursive complaint raise[d] a host of claims," as Judge Jackson explained, related to the denial of overtime in January 2018 and subsequent administrative proceedings. *Bozgoz*, 2020 WL 4732085, at *5; *see also id.* at *3 (noting that the complaint included "over three hundred pages of exhibits" and brought claims against "forty-two defendants, most of whom were employees of the [VA]"). Although the

2

complaint included eleven different claims—many of which themselves contained sub-parts—Judge Jackson dismissed all but Plaintiffs' "Title VII, Rehabilitation Act, and Age Discrimination in Employment claims." *Id.* at *5. "But under those laws," Judge Jackson held, "the only appropriate defendant is the 'head of the . . . agency' that employs the plaintiff." *Id.* at *9 (quoting 42 U.S.C. § 2000e-16(c)). Judge Jackson accordingly dismissed all defendants aside from "Robert Wilkie, in his official capacity as the Secretary of the VA." *Id.*

As for the balance of Plaintiffs' suit, Judge Jackson dealt first with Plaintiffs' constitutional claims, which were "based upon violations of the First, Third, Fourth, Fifth, and Ninth Amendments." *Id.* Plaintiffs' allegations under 42 U.S.C. § 1983 were insufficient because "all defendants [we]re federal employees," and Section 1983 "applies only to state officials acting under color of state law." *Id.* And, although *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), affords courts "discretion in some circumstances to create a remedy against federal officials for constitutional violations," Judge Jackson concluded that under D.C. Circuit precedent "special factors counsel[ed]" against doing so based on Plaintiffs' claims. *Id.* at *9–10 (alterations omitted) (quoting *Wilson v. Libby*, 535 F.3d 697, 704 (D.C. Cir. 2008)). That left a bevy of statutory and common law claims, which Judge Jackson found were also insufficiently pled. These claims included a "common law conspiracy" claim, along with statutory claims under the Privacy Act, the Occupational Safety and Health Act, the Racketeer Influenced and Corrupt Organizations ("RICO") Act, the Fail Labor Standards Act, and the Civil Service Reform Act. *Id.* at *10–14.

Because "[a]ll of the remaining claims relate[d] solely to alleged acts of discrimination and retaliation against" Robert Bozgoz, Judge Jackson dismissed Margaret Bozgoz as a plaintiff. *Id.* at *16. And because "a non-lawyer cannot represent another person in a civil action," Judge

Jackson clarified that Margaret "may not represent her husband's interests in this case," although Robert remained free to "proceed *pro se* and represent himself" or to "request[] that the Court appoint counsel to represent him." *Id.*

Judge Jackson gave Robert Bozgoz several weeks to indicate whether he wished to proceed *pro se*, whether "he [wa]s requesting that the Court appoint counsel to represent him," or whether, in his view, "Rule 17 [wa]s applicable." Order, *Bozgoz v. James*, 19-cv-239 (D.D.C. Aug. 14, 2020) (Dkt. 76 at 2); *see also* Fed. R. Civ. P. 17(c)(2) (providing for the appointment of a guardian ad litem for an incompetent person who does not have a duly appointed representative). Robert Bozgoz did not respond to the Court's instruction, and instead Margaret Bozgoz "filed motions on behalf of Robert Bozgoz, Lance Fulgium, James Joseph Ryan, James 'Jimmy' Anthony Koki Ryan, and herself seeking to amend the complaint and to add the Ryans—who are identified as residents of Japan—as intervenors/plaintiffs." Order, *Bozgoz v. James*, 19-cv-239 (D.D.C. Jan. 4, 2021) (Dkt. 88 at 3). Judge Jackson issued a minute order noting that the claims raised in these motions were "entirely unrelated to the facts underlying Robert Bozgoz's claims of discrimination and retaliation" and that, as a result, "they must be filed as a separate action in the appropriate court." Minute Order, *Bozgoz v. James*, 19-cv-239 (D.D.C. Oct. 4, 2021). Nevertheless, "the flow of duplicative and improper filings by Margaret Bozgoz, on behalf of herself and other individuals who, like her, [we]re not parties to th[e] case, continued." Order, *Bozgoz v. James*, 19-cv-239 (D.D.C. Jan. 4, 2021) (Dkt. 88 at 3).

Judge Jackson therefore gave Robert Bozgoz one last opportunity "to file a notice by December 15, 2020 informing the Court whether 1) he intends to retain counsel; 2) he intends to proceed pro se; 3) he is asking the Court to appoint counsel; or 4) this Court should institute proceedings to appoint a guardian ad litem under Federal Rule of Civil Procedure 17." *Id.*

4

Although "the Clerk's Office [] continued to receive numerous proposed filings prepared and signed by Margaret Bozgoz," Robert Bozgoz never submitted a responsive filing. *Id.* at 4 n.2. Judge Jackson, accordingly, dismissed "the remaining claims . . . for want of prosecution." *Id.* at 4.

**B.    The Severed Complaint**

Pursuant to Judge Jackson's severance order, this case includes Plaintiffs' allegations relating to "all events and claims arising between January 29, 2019 and August 7, 2019." Dkt. 1-1 at 2.  As a result, pages 93 to 186 of the Fourth Amended Complaint in Civ. No. 19-239 became the operative complaint in this matter, Civ. No. 19-2790. *See* Dkt. 1.

According to the severed complaint, on April 2, 2019, "Robert [Bozgoz] sent the VA a letter resigning under protest due to the ongoing acts of retaliation" by the VA, which, according to Plaintiffs, "were so intolerable that he had no other choice." *Id.* at 4 (Compl. ¶ 219).  Plaintiffs further claim that "the VA obstructed justice, violated the 13th Amendment[,] and violated ADA [i]nterference law by preventing the delivery of [Robert's] letter of resignation." *Id.* at 5 (Compl. ¶ 221).  When Plaintiffs attempted to deliver the letter of resignation, Angela Kendrix, a VA official, "called for additional security officers," although the complaint does not explain why Kendrix felt the need to do so; eventually, however, Margaret Sue Bozgoz "ran out of the building," injuring herself in the process. *Id.*  Plaintiffs separately allege that on the same day "Judge Jackson, VA General Counsel, VA leadership, [and] Assistant U.S. Attorney Fred Haynes conspired and hid the reasonable accommodations in the PACER system." *Id.* at 6 (Compl. ¶ 224).[1]

---

[1] The precise nature of the "reasonable accommodations" that Plaintiffs were denied is unclear, however. *See also Bozgoz*, 2020 WL 4732085, at *2 n.5 (noting that "Plaintiffs characterize all

5

The bulk of Plaintiffs' subsequent allegations focus on their efforts to serve the Fourth Amended Complaint in Civ. No. 19-239 on the many defendants Plaintiffs named in that action. On May 31, 2019, Plaintiffs allege that Robert Bozgoz and Larry Fulgium, described as Plaintiffs' process server, "attempt[ed] service of summons on Angela Kendrix," but that Kendrix "dodged service." Dkt. 1 at 8 (Compl. ¶ 231). Although the Fourth Amended Complaint does not describe this interaction in detail, it does aver that later that day Kendrix "filed a police report." *Id.* at 10 (Compl. ¶ 237). Plaintiffs "informed Mr. Fred Haynes, [f]ormer Assistant U.S. Attorney for the District of Columbia," of Kendrix's actions, and, Plaintiffs claim, Haynes "volunteered to coordinate" effecting service on Kendrix. *Id.* at 9 (Compl. ¶¶ 234–35). Several days later, on June 2, 2019, Plaintiffs allege that "Robert Bozgoz drove Lance Fulgium, his process server, to a number of Defendant[s] home addresses," including the home of Voncelle James, Robert's supervisor during his time with the VA. *Id.* at 10 (Compl. ¶ 238).

Neither James nor Kendrix, according to Plaintiffs, "acknowledge[d] proper service," and so Plaintiffs continued to try to effect service on them. *Id.* at 12 (Compl. ¶ 244). Robert Bozgoz and Fulgium again went to Defendants' homes, including Kendrix's, at 5 a.m. on June 6, 2019. *Id.* at 13 (Compl. ¶ 245). They "missed her," however, and then drove to "Voncelle James'[s] residence," arriving at 5:55 a.m. *Id.* (Compl. ¶ 246). Robert and Fulgium parked "across the street from her home" and, according to Plaintiffs, waited over an hour, until 7 a.m. *Id.* at 14 (Compl. ¶ 247). When Fulgium eventually saw James and approached her, announcing his

---

of the[ir] requests—for leave, for transfers, for telework, etc.—as requests for reasonable accommodations" but fail to "describe the specific nature of the disability that any particular request was intended to accommodate, how any request related to [Robert's] disability or disabilities, or in what way anything requested would have enabled [Robert] to perform the essential functions of his job or enable him to enjoy the benefits and privileges of his employment").

6

intentions of effecting service, James "started screaming," and an altercation allegedly ensued. *Id.* Plaintiffs aver that Robert Bozgoz recorded this interaction on his cell phone, but that Judge Zuberi Williams—a Maryland district court judge who is also a (now-dismissed) Defendant in the instant matter—"ordered the Bozgozes to remove the video using false testimony provided by Voncelle James with the guidance of Mr. Haynes, VA Leadership, VA General Counsel James Byrne, and [Darryl] Blackwell," a VA official. *Id.* 14–16 (Compl. ¶ 247).

Plaintiffs further allege that "James retaliated against" Plaintiffs "by filing a false police report." *Id.* at 17 (Compl. ¶ 248). At other points, however, Plaintiffs claim that numerous Defendants, including "(1) VA Leaders; (2) Mr. Blackwell; (3) Mr. Haynes[,] and (4) VA General Counsel . . . retaliated" against Plaintiffs "by directing/guiding Voncelle James to file (1) a false police report on [Fulgium]," and "(2) a false peace order against" Plaintiffs. *Id.* at 19 (Compl. ¶ 252). During an ensuing "Peace Order hearing" before Judge Williams, Plaintiffs maintain that "Voncelle James perjured herself and committed slander on Robert" Bozgoz and that Judge Williams appeared to have been "briefed" on James's testimony "before Voncelle James appeared before him." *Id.* at 20–21 (Compl. ¶¶ 253–54). Over the next several days, Haynes and Blackwell "cancelled the planned service of process," according Plaintiffs, and "an Anne Arundel Sheriff's Department Deputy interrupted Lance [Fulgium]'s service of process duties by serving the Bozgozes with a Peace Order that was based on perjured testimony orchestrated by the [D]efendants." *Id.* at 22–23 (Compl. ¶¶ 258, 260).

Plaintiffs further allege that "Voncelle James perjure[d] herself in open court" and that Judge Williams refused to admit and ignored Plaintiffs' evidence, all while "guiding" James regarding "what evidence to provide." *Id.* at 24 (Compl. ¶¶ 263, 266). Judge Williams then "issued a void order while gaslighting and ignoring the facts." *Id.* at 25 (Compl. ¶ 267). "In

7

addition," Plaintiffs continue, "Judge Amy Jackson[] also kn[ew] about the conspiracy and void order and [] d[id] absolutely nothing." *Id.*  According to Plaintiffs, this "conspiracy" continued when, several weeks later, "VA Leadership, Judge Amy Jackson, [the] U.S. Attorney's Office for the District" of D.C., and a Montgomery County official coordinated with James to file "another Criminal Charge" against Plaintiffs "using her fake peace order procured by her perjury." *Id.* at 29 (Compl. ¶ 278).  The result of any such criminal charges are unclear from the operative complaint, however, and the remaining allegations included in the portions of Plaintiffs' complaint that remained before Judge Jackson fall outside the purvey of the claims before this Court.  *See* Dkt. 1-1 (limiting this action to "all events and claims arising between January 29, 2019 and August 7, 2019").[2]

**C.      Procedural History**

These events give rise to two sets of claims.  The first is a series of statutory claims, including causes of action under Title VII of the Civil Rights Act of 1964, the Rehabilitation Act of 1973, the Age Discrimination in Employment Act, and the Americans with Disabilities Act. *See Bozgoz v. James*, 19-cv-239 (D.D.C.), Dkt. 41 at 31 (Compl. ¶¶ A1–A10); *see also* Dkt. 1 at 1–29 (Compl. ¶¶ 208–278).[3]  The second set of claims are primarily constitutional in nature and includes claims under 42 U.S.C. § 1983 and *Bivens* based on alleged violations of (among others) the First, Third, Fourth, Fifth, Ninth, and Thirteenth Amendments.  *See* Dkt. 1 at 122–124 (Compl. ¶ 279).

---

[2] Plaintiffs' severed complaint does include additional allegations against Judges Jackson and Williams, but because—as described below—this Court has already dismissed those parties as Defendants, *see* Dkt. 7, the Court need not recount those allegations in detail here.

[3] Because the complaint in this case represents a severed portion of the Fourth Amended Complaint before Judge Jackson, *see* Dkt. 1-1, the Court must, at times, reference that Fourth Amended Complaint when describing Plaintiffs' claims in this case.

Plaintiffs' severed complaint was deemed filed on September 4, 2019. *See* Dkt. 1. The Court *sua sponte* dismissed both Judges Jackson and Williams on February 4, 2020, concluding that they were entitled to absolute immunity because Plaintiffs' claims against them arose out of their conduct as judicial officers. Dkt. 7 at 2–3. Plaintiffs responded with a flurry of filings, including a mandamus petition to the D.C. Circuit "seek[ing] to compel the recusal" of the undersigned judge. *In re: Margaret Sue Bozgoz*, No. 20-5149 (D.C. Cir. June 26, 2020) (per curiam) (denying that petition); *see also In re: Margaret Sue Bozgoz*, No. 20-5149 (D.C. Cir. Oct. 29, 2020) (per curiam) (denying motion for reconsideration and "direct[ing]" the "Clerk . . . to accept no further submissions from petitioner"). Plaintiffs also moved for leave in this Court to amend their operative complaint to name as defendants (among others) the undersigned judge, the Courtroom Deputy Clerk, and three current and former lawyers from the United States Attorney's Office for the District of Columbia. *See* Dkt. 10. The Court denied Plaintiffs' request for leave to amend, noting that this was not "Plaintiffs' first foray at judge shopping." Dkt. 17 at 8. The Court subsequently dismissed the remaining non-federal Defendants for failure to effect service, despite "repeated warnings" from the Court and a series of extensions that, all told, afforded Plaintiffs "[n]early 600 days" to serve those parties. Dkt. 34 at 10.

The remaining Defendants—two former Assistant U.S. Attorneys and three current and former VA officials—collectively filed a motion to dismiss on May 28, 2021. Dkt. 38. In response, Plaintiffs submitted over 3,000 pages of filings, "nearly all of which" were "entirely unrelated to Defendants' pending motion to dismiss, or the claims set forth in Plaintiffs' complaint." Dkt. 49 at 2 (citations omitted). The Court identified, within these many thousands of pages of documents, an opposition to Defendants' motion to dismiss. *See id.* That document has now been docketed, Dkt. 48, and Defendants—who had previously received the opposition

9

via email—filed their reply on September 1, 2021, Dkt. 46.  Most recently, Plaintiffs filed yet another lengthy motion, a "Motion to Transfer the Case to the Department of Defense, Military Tribunal."  Dkt. 50.

## II.  LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a complaint," *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002), and in evaluating such a motion, the Court "must first 'tak[e] note of the elements a plaintiff must plead to state [the] claim' to relief, and then determine whether the plaintiff has pleaded those elements with adequate factual support to 'state a claim to relief that is plausible on its face,'" *Blue v. District of Columbia*, 811 F.3d 14, 20 (D.C. Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)) (alterations in original) (citation omitted).  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, [if] accepted as true, to 'state a claim to relief that is plausible on its face,'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  In considering a motion to dismiss for failure to state a claim, the Court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice." *Trudeau v. FTC*, 456 F.3d 178, 183 (D.C. Cir. 2006).  "[R]elated proceedings in other courts" are among those matters of which the Court may take judicial notice. *Dupree v. Jefferson*, 666 F.2d 606, 608 n.1 (D.C. Cir. 1981).

## III.  ANALYSIS

Before turning to the substance of Defendants' motion to dismiss, the Court pauses to note the limited scope of its task.  In her order severing a portion of the case before her for reassignment, Judge Jackson stressed that "a judge should not disqualify herself from all matters

10

involving a litigant simply because the litigant has taken 'the simple act of suing the judge, particularly where the suit is primarily based on the judge's prior rulings.'" Dkt. 1-1 at 1. Judge Jackson, nonetheless, decided to sever a portion of the Fourth Amended Complaint because that portion of the complaint involved only "claims arising after initiation of the lawsuit." *Id.* at 2. But that slice of the case was a narrow one, involving only "claims arising between January 29, 2019 and August 7, 2019." *Id*. As the Court has previously explained, Judge Jackson's order did not present Plaintiffs with the opportunity to relitigate in this action the portions of the case that remained before her or to pick and choose which action to use as a springboard for Plaintiffs' ever-evolving claims and theories. Accordingly, the undersigned has taken care to limit the scope of this action to those claims—and only those claims—that Judge Jackson concluded were best assigned to another judge. The reasons that those claims must be dismissed are many.

As an initial matter, Plaintiffs' opposition to Defendants' motion to dismiss is wholly unresponsive to Defendants' arguments. Rather than engage Defendants' stated grounds for dismissal, Plaintiffs resort to many of the same refrains found throughout their recent filings. *See* Dkt. 48. They describe this Court's orders as "void," for example, and maintain that "the Department of Justice and Judge[] Amy B. Jackson," along with the undersigned judge, have "deliberately ignored the truth." *Id.* at 3. This Court expressly warned Plaintiffs that their failure to address Defendants' arguments might prompt the Court to "treat those arguments that [P]laintiffs failed to address as conceded." Dkt. 39 at 1–2 (quoting *Xenophon Strategies, Inc. v. Jernigan Copeland & Anderson, PLLC*, 268 F. Supp. 3d 61, 72 (D.D.C. 2017)). And here Plaintiffs have failed to address *any* of Defendants' arguments. *See* Dkt. 48. That omission, standing alone, provides sufficient basis to grant Defendants' motion. But, in any event,

11

Plaintiffs' claims fail in their own right.

Even accounting for the liberal pleading standing afforded *pro se* litigants, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), Plaintiffs' operative complaint fails to satisfy the basic, threshold requirement that Plaintiffs' "plain statement" include sufficient information to "sho[w] that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2).  Although Plaintiffs' complaint is at times difficult to follow, at bottom Plaintiffs describe a far-reaching conspiracy, with only vague objectives, requiring coordination between, among others, Judges Jackson and Williams, federal and state prosecutors, federal agencies, and myriad other state and local officials.  *See, e.g.*, Dkt. 1 at 6 (Compl. ¶ 224) ("Judge Jackson, VA General Counsel, VA leadership, [and] Assistant U.S. Attorney Fred Haynes conspired and hid the reasonable accommodations in the PACER system."); *id.* at 19 (Compl. ¶ 252) (alleging that "(1) VA Leaders; (2) Mr. Blackwell; (3) Mr. Haynes[,] and (4) VA General Counsel . . . retaliated" against Plaintiffs "by directing/guiding Voncelle James to file (1) a false police report on [Fulgium]," and "(2) a false peace order against" Plaintiffs); *id.* at 29 (Compl. ¶ 278) (alleging that "VA Leadership, Judge Jackson, [the] U.S. Attorney's Office for the District" of D.C., and a Montgomery County official coordinated with Voncelle James to file "another Criminal Charge" against Plaintiffs "using her fake peace order procured by her perjury").  These claims are as conclusory as they are implausible, and, although the Court must credit all well-pled allegations at this stage, "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" are not entitled to such deference.  *Iqbal*, 556 U.S. at 678.  The Court has reviewed Plaintiffs' operative complaint, along with a large quantity of other materials, and yet the Court has found nothing "showing that [Plaintiffs are] entitled to relief," Fed. R. Civ. P. 8(a)(2).

In addition, Plaintiffs' statutory claims fail as a matter of law.  Although Plaintiffs bring

claims under Title VII, the Rehabilitation Act, the ADA, and the ADEA, none of the remaining Defendants in Civ. No. 19-2790 are the proper defendant in such an action. Under these statutes, "the only appropriate defendant is the 'head of the . . . agency' that employs the plaintiff," which here is "the Secretary of the VA." *Bozgoz*, 2020 WL 4732085, at *9 (quoting 42 U.S.C. § 2000e-16(c)); *accord Nurriddin v. Bolden*, 674 F.Supp.2d 64, 81 (D.D.C. 2009) (holding that, under the Rehabilitation Act and Title VII, "the only proper defendant is the head of the department, agency, or unit" (citations omitted)); *Woodruff v. McPhie*, 593 F. Supp. 2d 272, 277 (D.D.C. 2009) (same for ADEA claims); *Ellington v. Libr. of Cong.*, 2020 WL 7059554, at *4 n. 4 (D.D.C. Dec. 2, 2020) (same for ADA claims). The Secretary of the VA, however, is not a party in this action. As for Plaintiffs' claims under the ADA, moreover, the federal government (including the VA) is not a covered employer under that statute. *See* 42 U.S.C. § 12111(5)(B)(i) ("The term 'employer' does not include . . . the United States."). Instead, "the Rehabilitation Act . . . is the exclusive remedy for federal employees alleging disability discrimination." *Richardson v. Yellen*, 167 F. Supp. 3d 105, 110 (D.D.C. 2016) (citation omitted).

      Plaintiffs' remaining constitutional claims also fail as a matter of law. Plaintiffs may not recover under 42 U.S.C. § 1983 because that statute authorizes suit against state actors, and each of the remaining Defendants is a federal employee. *See* Dkt. 34 at 11. Further, a *Bivens* claim is unavailable on the facts alleged by Plaintiffs. *See* Dkt. 1 at 30–32 (Compl. ¶ 279) (alleging violations of the First, Third, Fourth, Fifth, Ninth, and Thirteenth Amendments). As far as the Court can discern, Plaintiffs' *Bivens* claims are based on the alleged retaliation and discrimination Robert Bozgoz suffered while employed by the VA, along with Plaintiffs' waylaid efforts to effect service in their subsequent litigation and the peace order proceedings that ensued before Judge Williams in Maryland state court. To the extent that Plaintiffs' *Bivens*

claims seek to recover for Robert Bozgoz's employment-related grievances, it is well-established that "Title VII, the Rehabilitation Act, and the ADEA" provide for the kinds of "comprehensive remedial schemes that" foreclose a *Bivens* cause of action by "specifically prescrib[ing] a remedy for these sorts of violations." *Bozgoz*, 2020 WL 4732085, at *10 (collecting cases).  And any injury Plaintiffs assert by virtue of the peace order issued by Judge Williams should be addressed through adjudication in that tribunal, rather than a *Bivens* action in this Court.  *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 69 (2001) ("So long as the plaintiff had an avenue for some redress, bedrock principles of separation of powers foreclosed judicial imposition of a new substantive liability.").  Beyond these claims, it is difficult to fathom Plaintiffs' theory of constitutional violation, leaving the Court to conclude that, if such a theory exits, it must involve the type of extension of *Bivens* to a "new context" that the Supreme Court has discouraged.  *See id.* at 68 ("[W]e have consistently refused to extend *Bivens* liability to any new context or new category of defendants.").

Immunity further bars recovery.  Two of the remaining Defendants—Fred Haynes and Matthew Evan Kahn, former Assistant U.S. Attorneys—are entitled to immunity for most (if not all) of the conduct alleged in Plaintiffs' severed complaint.  Plaintiffs, as best the Court can tell, seek to hold Haynes and Kahn liable for their failure to assist Plaintiffs in effecting service on certain Defendants in the case before Judge Jackson.  *See, e.g.*, Dkt. 1 at 9 (Compl. ¶¶ 234–35) (alleging that "Mr. Fred Haynes, [f]ormer Assistant U.S. Attorney for the District of Columbia," "volunteered to coordinate" effecting service on Angela Kendrix) *id.* at 22 (Compl. ¶ 258) (alleging that Haynes "cancelled the planned service of process" on certain Defendants). It is settled law that prosecutors are entitled to absolute immunity in their capacities as advocates, *see Imbler v. Pachtman*, 424 U.S. 409, 424 (1976), and that absolute immunity

14

applies outside the criminal context, *see Gray v. Poole*, 243 F.3d 572, 576 (D.C. Cir. 2001) ("[A]bsolute immunity [is] applicable to agency attorneys in administrative enforcement proceedings."). Exactly how far beyond the criminal context this absolute immunity applies, and specifically whether it reaches the conduct at issue here—the civil defense of agency action—however, presents a difficult question. To be sure, precedent from outside this circuit has (at least at times) extended this immunity to government lawyers engaged in advocacy in civil litigation, *see, e.g.*, *Spuck v. Pa. Bd. of Prob. & Parole*, 563 Fed. App'x 156, 158 (3d Cir. 2014) (per curiam); *Fry v. Melaragno*, 939 F.2d 832, 837 (9th Cir. 1991); *Auriemma v. Montgomery*, 860 F.2d 273, 276, 278 (7th Cir. 1988); *Barrett v. United States*, 798 F.2d 565, 572 (2d Cir. 1986); *Ellison v. Stephens*, 581 F.2d 584, 585 (6th Cir. 1978), and at least two judges on this Court have followed suit, *see Ruiz Rivera v. Holder*, 666 F. Supp. 2d 82, 95 (D.D.C. 2009), *Bennett v. Stephens*, No. 88-cv-2610,1989 WL 17751, at *1 (D.D.C. Feb. 23, 1989). But the D.C. Circuit has yet to address the question, and it is by no means self-evident that the Supreme Court's reasoning in *Imbler* extends to government lawyers engaged in defending civil actions brought against the United States. Moreover, even assuming absolute immunity is at times available to government lawyers engaged in civil litigation, it is unclear that the conduct at issue here would constitute the type of "advocatory" activity that warrants that extraordinary protection. *Cf. Atherton v. D.C. Off. of Mayor*, 567 F.3d 672, 686–87 (D.C. Cir. 2009) (observing that "[s]imply because a prosecutor's conduct is connected with the grand jury does not make it advocatory" for purposes of prosecutorial immunity).

For present purposes, however, the Court need not decide whether Haynes and Kahn are entitled to absolute immunity because they are entitled to qualified immunity on the facts alleged in the operative complaint. Qualified immunity protects public officials "from liability for civil

15

damages insofar as their conduct does not violate clearly established statutory or constitutional rights." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Here, Plaintiffs have not plausibly alleged that Hayes or Kahn "violated a statutory or constitutional right," nor have they plausibly alleged that any such right was "clearly established at the time of the challenged conduct." *Harrison v. Fed. Bureau of Prisons*, 298 F. Supp. 3d 174, 183 (D.D.C. 2018) (quotation marks omitted). To be sure, Plaintiffs mention certain constitutional provisions and flatly assert that Defendants have violated those provisions. *See, e.g.*, Dkt. 1 at 5 (Compl. ¶ 221) (alleging that certain Defendants violated "the 13th Amendment . . . by preventing the delivery of [Robert's] letter of resignation"). But this Court need not credit such "conclusory statements," *Iqbal*, 556 U.S. at 678, which, in any event, fail to identify any clearly established constitutional right.[4]

For these reasons, the Court concludes that none of the remaining claims in the severed action pass muster, even under the permissive standard applicable to *pro se* litigants at the motion to dismiss stage of a proceeding. The Court will, accordingly, grant Defendants' motion to dismiss.

This, then, leaves Plaintiff's "Motion to Transfer the Case to the Department of Defense,

---

[4] Counsel for Defendants advises that he represents "James only in her official capacity and does not make any argument as to the individual-capacity claims against her." Dkt. 38 at 1 n.1. But any statutory claims against James in her individual capacity fail for the same reasons Plaintiffs' official-capacity statutory claims do—among other things, James is not a proper defendant. *See Bozgoz*, 2020 WL 4732085, at *9. And to the extent Plaintiffs bring constitutional claims against James in her individual capacity, rather than as a government actor, such claims are unavailable on the facts as alleged by Plaintiffs' operative complaint. Finally, although the underlying complaint suggests Plaintiffs brought common law causes of action against James in her individual capacity, those claims were not among those severed by Judge Jackson and so are not before the undersigned judge in this action. *See* Dkt. 1-1 at 2. At any rate, Plaintiffs have alleged insufficient facts to establish subject matter jurisdiction over any such common law claims—"[f]or diversity jurisdiction to exist, no plaintiff may share state citizenship with any defendant," *CostCommand, LLC v. WH Adm'rs, Inc.*, 820 F.3d 19, 21 (D.C. Cir. 2016), and here the underlying complaint identifies both Plaintiffs and James as Maryland residents, *see* Compl. at 1, 6, *Bozgoz v. James*, No. 19-cv-239 (D.D.C. Aug. 14, 2020) (Dkt. 41).

Military Tribunal." Dkt. 50.  Having dismissed the complaint, however, nothing remains to transfer, and, in any event, Plaintiffs' motion is frivolous.  Rather than establishing any proper ground for transferring this matter to a military tribunal—and, of course, there is none—Plaintiffs use that 195-page filing to accuse (among others) the undersigned judge, Judge Jackson, and "United States Inc." of "fraud, waste, abuse, and RICO." *Id.* at 2.  The Court will, therefore, deny Plaintiffs' motion to transfer.

## CONCLUSION

For the foregoing reasons, the Court will **GRANT** Defendants' motion to dismiss, Dkt. 38; will **DISMISS** the complaint, Dkt. 1; and will **DENY** Plaintiffs' motion to transfer, Dkt. 50.  A separate order will issue.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  September 17, 2021